UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEAL PATAKY, JESSICA CLEEK, and LAUREN MICHELSON, individually, and on behalf of others similarly situated,<br><br>                               Plaintiffs,<br><br>v.<br><br>THE BRIGANTINE, INC., a California corporation,<br><br>                               Defendant. | Case No.: 3:17-cv-00352-GPC-AGS<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DENYING DEFENDANT'S MOTION TO STAY THE PROCEEDINGS PENDING DECISION OF THE SUPREME COURT OF THE UNITED STATES**<br><br>**[ECF No. 9.]** |

     Before the Court is Defendant The Brigantine, Inc.'s ("Defendant's" or "Brigantine's") motion to compel arbitration or, alternatively, to stay the proceedings pending decision of the Supreme Court of the United States in *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (2017). (Dkt. No. 9.) The motion has been fully briefed. (Dkt. Nos. 20, 22.) The Court deems this motion suitable for disposition without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having considered the parties' arguments and the applicable law, the Court **DENIES** Defendant's motion to compel arbitration and **DENIES** Defendant's request for a stay.

/ / / /

## BACKGROUND

On February 22, 2017, Plaintiffs Neal Pataky ("Plaintiff" or "Pataky"), Jessica Cleek ("Plaintiff" or "Cleek"), and Lauren Michelson ("Plaintiff" or "Michelson") (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, filed the instant putative class action against The Brigantine, Inc., a California corporation which owns and operates multiple restaurants in San Diego County. (Dkt. No. 1, Compl. ¶ 4.) Plaintiffs allege that Defendant maintained an unlawful "tip pooling" policy, under which Plaintiffs, who were employed as servers at Defendant's restaurants, had to "tip out" portions of their earned tip income to other employees who do not provide direct table service to customers. (Compl. ¶¶ 8–9.) Plaintiffs assert three claims for relief based on Defendant's alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, (Compl. ¶¶ 15–22); unfair business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, (Compl. ¶¶ 23 – 28); and unlawful business practices in violation of the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*, (Compl. ¶¶ 29–34).

In support of its motion, Defendant attached copies of the Employment At-Will and Arbitration Agreement, signed by Pataky, Cleek, and Michelson on September 4 or September 5, 2014. (Dkt. No. 9-2, Carl Decl. Exs. A, C, E.) Employees are presented with an Employment At-Will and Arbitration Agreement as part of Defendant's hiring practice. (Carl Decl. ¶ 3.) As a matter of company policy, employees are not required to sign the document. (*Id.*) Human resources instructs managers not to force or require employees to sign the agreement—indeed, some employees decline to sign the agreement, with no effect on their employment status. (*Id.*) Nonetheless, Defendant does not specify whether employees are affirmatively instructed that signing the agreement is optional. (*See id.*) And the language of the Arbitration Agreement does not give employees any notice that they may opt out of the agreement, or that signing it is completely voluntary and will have no effect on their employment status. (*See* Dkt. No. 9-2, Carl Decl. Exs. A, C, E.)

2

Paragraph 2 of the Arbitration Agreement reads as follows:

> *I and the Company agree to utilize binding individual arbitration as the sole and exclusive means to resolve all disputes that may arise out of or be related in any way to my employment*, including but not limited to the termination of my employment and my compensation. I and the Company each specifically waive and relinquish our respective rights to bring a claim against the other in a court of law. Both I and the Company agree that any claim, dispute, and/or controversy that I may have against the Company (or its owners, directors, officers, managers, employees, or agents), or the Company may have against me, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act ("FAA"), in conformity with the procedures of the California Arbitration Act (Cal. Code Civ. Proc. sec 1280 et seq., including section 1283.05 and all of the Act's other mandatory and permissive rights to discovery). The FAA applies to this Agreement because the Company's business involves interstate commerce. Included within the scope of this Agreement are all disputes, whether based on tort, contract, statute (including, but not limited to, any claims of discrimination, harassment and/or retaliation, whether they be based on the California Fair Employment and Housing Act, Title VII of the Civil Rights Act of 1964, as amended, or any other state or federal law or regulation), equitable law, or otherwise. The only exception to the requirement of binding arbitration shall be for claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under the California Workers' Compensation Act, Employment Development Department claims, or other claims that are not subject to arbitration under current law. However, nothing herein shall prevent me from filing and pursuing proceedings before the California Department of Fair Employment and Housing, or the United States Equal Employment Opportunity Commission (although if I choose to pursue a claim following the exhaustion of such administrative remedies, that claim would be subject to the provisions of this Agreement). By this binding arbitration provision, I acknowledge and agree that both the Company and I give up our respective rights to trial by jury of any claim I or the Company may have against the other.

(Dkt. No. 9-2 at 4.)

Paragraph 3 of the Arbitration Agreement contains a class action waiver:

> All claims brought under this binding arbitration Agreement shall be brought in the individual capacity of myself or the Company. This binding arbitration Agreement shall not be construed to allow or permit the consolidation or joinder of other claims or controversies involving any other employees or parties, or permit such claims or controversies to proceed as a class action, collective action or any similar

3

representative action. No arbitrator shall have the authority under this agreement to order any such class, collective or representative action. By signing this agreement, I am agreeing to waive any substantive or procedural rights that I may have to bring an action on a class, collective, representative, or other similar basis.

(*Id.*)

Paragraph 6 contains a severability provision: "If any term, provision or portion of this Agreement is determined to be void or unenforceable it shall be severed and the remainder of this Agreement shall be fully enforceable." (*Id.* at 5.)

Each of the three Plaintiffs supplied a declaration testifying that the copies of the Employment At-Will and Arbitration Agreement proffered by Defendant "do not look familiar," that they lack "specific recollection of having signed" the Agreement, that they "had no idea" that they "may have signed an arbitration agreement with Brigantine" until they reviewed Defendant's exhibits, and that they lack "recollection of anyone at Brigantine ever explaining . . . that signing an arbitration agreement meant [they] could not file a lawsuit about employment issues with Brigantine, or represent other employees in a class action." (Dkt. No. 12-4, Cleek Decl. ¶ 9; Dkt. No. 12-5, Michelson Decl. ¶ 9; Dkt. No. 12-6, Pataky Decl. ¶ 10.) None of the Plaintiffs took the agreements home for review or consulted an attorney. (*Id.*)

On March 16, 2017, Defendant filed the instant motion to compel arbitration. (Dkt. No. 9.) In the alternative, Defendant requests that the Court stay the proceedings pending the Supreme Court's ruling in *Morris*. (Dkt. No. 9.) On April 7, 2017, Plaintiffs filed an opposition to Defendant's motion, arguing that *Morris* prevents the Court from compelling arbitration in the instant case, and that a stay is inappropriate. (Dkt. No. 20.) On April 21, 2017, Defendant filed a reply. (Dkt. No. 22.)

**LEGAL STANDARD**

Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA provides that "a party

aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Federal policy favors arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24–25.

In ruling on a motion to compel arbitration, a court must determine two gateway matters: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). If these conditions are satisfied, the court lacks discretion to deny the motion and must compel arbitration. 9 U.S.C. § 4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration."). In addition, § 3 of the FAA provides that once a court compels arbitration, the court "shall on application of one of the parties stay the trial of the action" until arbitration has occurred. 9 U.S.C. § 3. However, "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4.

**DISCUSSION**

I. **Motion to Compel Arbitration**

   A. **The Existence of the Arbitration Agreement**

"It is a settled principle of law that 'arbitration is a matter of contract.'" *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (quoting *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). "To evaluate the validity of an arbitration agreement, federal courts 'should apply ordinary

5

state-law principles that govern the formation of contracts.'" *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Plaintiffs contest the existence of the arbitration agreements. (Dkt. No. 20 at 20–24.) Plaintiffs testify that they each lack recollection of having signed or seen the arbitration agreement nearly three years ago, that they did not understand the agreement to mean that they could not file an employment lawsuit against Defendant on behalf of themselves or others similarly situated, that they do not recall receiving an explanation from anyone regarding the consequences of signing the agreement, and that they never reviewed the agreement at home or with a lawyer. (Dkt. No. 12-4, Cleek Decl. ¶ 9; Dkt. No. 12-5, Michelson Decl. ¶ 9; Dkt. No. 12-6, Pataky Decl. ¶ 10.)

While the circumstances surrounding the formation of the agreements may be unclear (*e.g.*, how the agreements were presented to Plaintiffs; whether anyone witnessed Plaintiffs sign the agreements; and what, if anything, Defendant or its representatives said to Plaintiffs about the agreements), Plaintiffs' objections do not go to the existence of a contract. Plaintiffs do not contest that the agreements bear their respective signatures. Plaintiffs cite no law requiring Defendant or its representative to countersign the arbitration agreement, where the agreement makes amply clear that the agreement is between the employee and Brigantine, expressly defined in the agreement as "the Company." (Dkt. No. 9-2 at 4–5.)

Furthermore, *Flores v. Nature's Best Distribution, LLC*, 7 Cal. App. 5th 1, 6 (Cal. Ct. App. 2016), *review denied* (Mar. 29, 2017), is inapposite. The *Flores* court expressly declined to decide whether the defendant properly authenticated the arbitration agreement. *See* 7 Cal. App. 5th at 9 ("We do not need to address whether the Agreement was properly authenticated because, even assuming the Agreement indeed bears plaintiff's signature, it fails to reflect plaintiff's agreement to submit her claims against defendants in the instant case to binding arbitration pursuant to its terms."). Unlike the arbitration agreement in this case, the body of the agreement in *Flores* did not define either "employee" or "Company" or identify with which entity the plaintiff had made an

agreement. *Id.* The arbitration agreement in *Flores* further failed to clearly define which disputes would be subject to arbitration, and which would instead be subject to resolution through a grievance and arbitration procedure contained in a collective bargaining agreement. *Id.* at 10. The arbitration agreement did not identify which set of rules would apply to binding arbitration. *Id.* In conclusion, the *Flores* court held that the ambiguity of the agreement precluded a conclusion that the parties had reached an agreement:

> Viewing the Agreement as a whole, the Agreement is ambiguous regarding (1) whether the arbitration provision of the Agreement (not a grievance and arbitration procedure of a collective bargaining agreement) applied to any or all of plaintiff's claims against any or all of defendants in the instant action and (2) the governing rules and procedures for any such arbitration. We cannot conclude the parties reached agreement on the matter of submitting any or all of plaintiff's claims to final and binding arbitration as contemplated by the Agreement. The trial court therefore did not err by denying the petition; we do not need to analyze whether the arbitration provision was procedurally and/or substantively unconscionable.

*Id.* at 11 (internal citation omitted). *Flores* is distinguishable from the instant case, and Plaintiffs' reliance on *Flores* is misplaced.

In addition, the arbitration agreement each Plaintiff signed specifically provides, "I and the Company each specifically waive and relinquish our respective rights to bring a claim against the other in a court of law." (Dkt. No. 9-2 at 4.) The agreement also contains a bolded, all-caps acknowledgment before the signature line:

> **MY SIGNATURE BELOW ATTESTS TO THE FACT THAT I HAVE READ, UNDERSTAND, AND AGREE TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS. I FURTHER UNDERSTAND THAT THIS AGREEMENT REQUIRES ME TO ARBITRATE ANY AND ALL DISPUTES THAT ARISE OUT OF MY EMPLOYMENT.**
> DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE ACKNOWLEDGMENT AND AGREEMENT.

(*Id.* at 5.) That Plaintiffs now lack recollection of having signed the agreement and now testify that they did not understand the agreement does not comport with the acknowledgment that they signed.

Plaintiffs also dispute that the arbitration agreement covers the instant litigation. (Dkt. No. 20 at 20–24.) "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999). Here, there can be no doubt regarding the expansive scope of the arbitration agreement, given the following unambiguous language:

> I and the Company agree to utilize binding individual arbitration as the sole and exclusive means to resolve *all disputes that may arise out of or be related in any way to my employment*, including but not limited to the termination of my employment and my compensation . . . Both I and the Company agree that *any claim, dispute, and/or controversy that I may have against the Company (or its owners, directors, officers, managers, employees, or agents)*, or the Company may have against me, shall be submitted to and determined exclusively by binding arbitration . . . Included within the scope of this Agreement are *all disputes*, whether based on tort, contract, statute (including, but not limited to, any claims of discrimination, harassment and/or retaliation, whether they be based on the California Fair Employment and Housing Act, Title VII of the Civil Rights Act of 1964, as amended, or any other state or federal law or regulation), equitable law, or otherwise. The *only exception* to the requirement of binding arbitration shall be for claims arising under the National Labor Relations Act which are brought before the National Labor Relations Board, claims for medical and disability benefits under the California Workers' Compensation Act, Employment Development Department claims, or other claims that are not subject to arbitration under current law.

(Dkt. No. 9-2 at 4 (emphases added).) Because the arbitration agreement clearly covers all disputes arising out of Plaintiffs' employment with Defendant, save for the narrow exception delineated above, Plaintiffs' argument is unavailing.

Having concluded that the arbitration agreements exist, and that they cover the instant dispute, the Court turns to examine whether the Ninth Circuit's decision in *Morris* renders the arbitration agreements unenforceable.

### B. Applicability of the Ninth Circuit's Decision in *Morris*

In its arbitration jurisprudence, the Supreme Court has repeatedly stated that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the *substantive rights* afforded by the statute; it only submits to their resolution in an arbitral, rather than a

judicial, forum." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) (emphasis added); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (U.S. 1991); *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 229 (1987); *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310–11 (2013) (stating that although the Supreme Court has never invalidated an arbitration agreement on grounds of the "'effective vindication' exception" to the FAA," the exception "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights"); *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 102 (2012) (holding that contract "parties remain free to specify" their choice of judicial forum "so long as the *guarantee*" of the statute "is preserved").

Section 7 of the National Labor Relations Act ("NLRA") provides that employees have "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Section 8(a)(1) makes it "an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section [7]." 29 U.S.C. § 158(a). In 2012, the National Labor Relations Board ("NLRB") held that "[t]he right to engage in collective action—including collective *legal* action—is the core substantive right protected by the NLRA and is the foundation on which the Act and Federal labor policy rest." *In Re D.R. Horton, Inc.*, 357 NLRB 2277, 2286 (2012). Accordingly, following the Supreme Court's arbitration jurisprudence regarding substantive statutory rights, the NLRB concluded that an employer violates the NLRA "when it requires employees covered by the Act, as a condition of their employment, to sign an agreement that precludes them from filing joint, class, or collective claims addressing their wages, hours, or other working conditions against the employer in any forum, arbitral or judicial." *Id.* at 2277.

In *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *cert. granted*, 137 S. Ct. 809 (2017), the Ninth Circuit examined "whether an employer violates the National

9

3:17-cv-00352-GPC-AGS

Labor Relations Act by requiring employees to sign an agreement precluding them from bringing, in any forum, a concerted legal claim regarding wages, hours, and terms and conditions of employment." 834 F.3d at 979. Applying principles of *Chevron* deference, the Ninth Circuit adopted the NLRB's interpretation of Sections 7 and 8 of the NLRA in *D.R. Horton*.[1] *Id.* at 980–84. "Section 7's 'mutual aid or protection clause' includes the substantive right to collectively 'seek to improve working conditions through resort to administrative and judicial forums.'" *Id.* at 983 (quoting *Eastex, Inc. v. NLRB*, 437 U.S. 556, 566). Accordingly, "an employer may not defeat the right by requiring employees to pursue all work-related legal claims individually" without violating § 8. *Id.*

Following the NLRB's conclusion that "[c]oncerted activity—the right of employees to act *together*—is the essential, substantive right established by the NLRA," the Ninth Circuit concluded that "Ernst & Young interfered with that right by requiring its employees to resolve all of their legal claims in separate proceedings.'" *Id.* at 980. Because the arbitration agreement "interfere[d] with a protected § 7 right in violation of § 8," the "separate proceedings" clause in the contract triggered the savings clause in FAA § 2 and could not be enforced. *Id.* at 983–84. The Ninth Circuit concluded:

> In sum, the "separate proceedings" provision of the Ernst & Young contract interferes with a substantive federal right protected by the NLRA's § 7. The NLRA precludes contracts that foreclose the possibility of concerted work-related legal claims. An employer may not condition employment on the requirement that an employee sign such a contract.

*Morris*, 834 F.3d at 990.

Defendant reads *Morris* narrowly, arguing that because Plaintiffs were not required to sign an arbitration agreement prohibiting class action, the arbitration agreement, with the embedded class action waiver, is enforceable. (Dkt. No. 9-1 at 16–17; Dkt. No. 22 at

---

[1] Defendant argues that *D.R. Horton* "has been rejected by most courts in the Ninth Circuit." (Dkt. No. 22 at 5.) In so arguing, Defendant ignores the Ninth Circuit's adoption of the NLRB's interpretation of Sections 7 and 8 of the NLRA in *Morris*.

10

2–5.) Defendant relies chiefly upon a footnote distinguishing *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072 (9th Cir. 2014), an earlier Ninth Circuit decision. (*Id.*) In the footnote, the majority in *Morris* wrote: "In contrast, there was no § 8 violation in *Johnmohammadi v. Bloomingdale's, Inc.* because the employee there could have opted out of the individual dispute resolution agreement and chose not to." *Morris*, 834 F.3d at 983 n.4. In *Johnmohammadi*, the employee, who sought to bring a class action on behalf of herself and fellow employees for unpaid wages, received upon her hiring a set of documents "inform[ing] her that she agreed to resolve all employment-related disputes through arbitration unless she returned an enclosed form within 30 days electing, as the form put it, 'NOT to be covered by the benefits of Arbitration.' Johnmohammadi did not return the opt-out form." 755 F.3d at 1074. Despite Johnmohammadi's argument that "filing th[e] class action on behalf of her fellow employees [wa]s one of the 'other concerted activities' protected by the Norris–LaGuardia Act and the NLRA," the Ninth Circuit chose not to "decide whether Johnmohammadi has correctly interpreted this statutory phrase. To prevail, she must still show that Bloomingdale's interfered with, restrained, or coerced her in the exercise of her right to file a class action." *Id.* at 1075. Because Johnmohammadi had the right to opt out of the agreement and voluntarily chose not to do so, the arbitration agreement was valid, and arbitration must be compelled. *Id.* at 1077.

Defendant's attempt to analogize the facts of this case to *Johnmohammadi* is unavailing. Unlike the agreement in *Johmohammadi*, the arbitration agreement in this case does not contain any express indication or implicit suggestion that employees had the right to opt out of the agreement, that they could refuse to sign the agreement without repercussion to their employment status, or that they could take the agreement home for thirty days to decide whether or not to opt out. (Dkt. No. 9-2, Carl Decl. ¶ 3.) While Defendant maintains that managers were instructed not to require employees to sign the agreement, there is no evidence that managers affirmatively informed employees that they had the choice not to sign the agreement. (*Id.*) Moreover, while employees are

presented with an Employment At-Will and Arbitration Agreement as part of Defendant's hiring practice, (*id.*), it is unclear under what circumstances Plaintiffs were presented with the agreement, and what, if anything, Plaintiffs learned from Defendant or its representatives about the agreement. Although the agreements were signed on September 4 or 5, 2014, Plaintiffs were hired well in advance of September 2014: Cleek was hired on May 1, 2013, (Dkt No. 20-1, Cleek Decl. ¶ 2); Michelson was hired in May 2013, (Dkt. No. 20-2, Michelson Decl. ¶ 2); and Pataky was hired some time in 2005, (Dkt. No. 20-3, Pataky Decl. ¶ 2). Defendant has not shown that Plaintiffs were on notice that they had an affirmative opt-out right. The facts surrounding the formation of the arbitration agreements fall far short of the facts in *Johnmohammadi*.

Although the Court need not resolve the question, the Court observes that the footnote distinguishing *Johnmohammadi* appears to be in tension with the remainder of the majority's opinion in *Morris*. In *Morris*, the Ninth Circuit concluded that a provision prohibiting concerted legal action in any forum violates § 8 of the NLRA on its own; the requirement that an employee sign a concerted action waiver is an additional violation of § 8:

> Section 8 establishes that "[i]t shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157." 29 U.S.C. § 158. A "separate proceedings" clause does just that: it prevents the initiation of any concerted work-related legal claim, in any forum. Preventing the exercise of a § 7 right strikes us as "interference" within the meaning of § 8. Thus, the Board's determination that a concerted action waiver violates § 8 is no surprise. *And an employer violates § 8 a second time by conditioning employment on signing a concerted action waiver*.

*Morris*, 834 F.3d at 982. *Morris* makes clear that "the arbitration requirement is not the problem. The same [separate proceedings] provision in a contract that required court adjudication as the exclusive remedy would equally violate the NLRA. *The NLRA obstacle is a ban on initiating, in any forum, concerted legal claims—not a ban on arbitration.*" *Morris*, 834 F.3d at 984 (emphasis added). Indeed, the decision reiterates

repeatedly that the relevant problem is the waiver of class action, not the requirement that the parties submit to arbitration:

> The *illegality of the "separate proceedings" term* here has nothing to do with arbitration as a forum. It would equally violate the NLRA for Ernst & Young to require its employees to sign a contract requiring the resolution of all work-related disputes *in court* and in "separate proceedings." The same infirmity would exist if the contract required disputes to be resolved through casting lots, coin toss, duel, trial by ordeal, or any other dispute resolution mechanism, if the contract (1) limited resolution to that mechanism and (2) required separate individual proceedings. *The problem with the contract at issue is not that it requires arbitration; it is that the contract term defeats a substantive federal right to pursue concerted work-related legal claims*.

*Id.* at 985 (emphases added).

Having concluded that concerted legal action is a protected substantive right under the NLRA, the majority continued on to explain how its conclusion squares with the FAA and Supreme Court precedent:

> Crucial to today's result is the distinction between "substantive" rights and "procedural" rights in federal law. The Supreme Court has often described rights that are the essential, operative protections of a statute as "substantive" rights. In contrast, procedural rights are the ancillary, remedial tools that help secure the substantive right.

*Id.* (internal citations omitted). The difference between substantive and procedural rights "is key, because *substantive rights cannot be waived in arbitration agreements*. This tenet is a fundamental component of the Supreme Court's arbitration jurisprudence[.]" *Id.* at 985–86 (internal citations omitted) (emphasis added); *see also id.* at 986 n.10 ("Contract parties can agree on the procedural terms they like (such as resolving disputes in arbitration), but they may not agree to leave the substantive protections of federal law at the door."). Accordingly, "when an arbitration contract professes the waiver of a substantive federal right, the FAA's saving clause prevents a conflict between the statutes by causing the FAA's enforcement mandate to yield." *Id.* at 986. Because "[t]he rights established in § 7 of the NLRA—including the right of employees to pursue legal claims

13

together—are substantive," and "are the central, fundamental protections of the Act," the "FAA does not mandate the enforcement of a contract that alleges their waiver." *Id.* Accordingly, the "separate proceedings" clause was an "illegal" term that could not be enforced under the savings clause in § 2 of the FAA. *Id.* at 985 ("When an illegal provision not targeting arbitration is found in an arbitration agreement, the FAA treats the contract like any other; the FAA recognizes a general contract defense of illegality." (citing, *inter alia*, 9 U.S.C. § 2)).

In light of the above, it is unclear whether providing a clear opportunity to opt out of an arbitration agreement containing a class action waiver, as in *Johnmohammadi*, neutralizes a class action waiver's interference with Sections 7 and 8 of the NLRA. However, given that the facts surrounding the formation of the arbitration agreements in this case are distinguishable from those in *Johnmohammadi*, the Court does not need to resolve the apparent tension between *Morris* and *Johnmohammadi*. The Court next proceeds to examine whether the class action waiver provision is severable.

**C. Severability**

Plaintiffs argue that the Court may not sever the class action waiver in the arbitration agreement and compel Plaintiffs to class arbitration. (Dkt. No. 20 at 19–20.) Even without the class action waiver, there is no contractual basis for determining that the parties agreed to submit to class arbitration. (*Id.*) Defendant does not respond to Plaintiffs' argument.

The Supreme Court has held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010). Furthermore,

> An implicit agreement to authorize class-action arbitration, however, is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate. This is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator.

14

*Id.* at 685.

Here, the arbitration agreement explicitly rules out class arbitration in Paragraphs 2 and 3. The agreement states that the parties "agree to utilize binding *individual* arbitration as the *sole and exclusive means* to resolve all disputes that may arise out of or be related in any way to [the employee's] employment." (Dkt. No. 9-2 at 4 (emphases added).) The agreement expressly provides that "[t]his binding arbitration Agreement shall not be construed to allow or permit the consolidation or joinder of other claims or controversies involving any other employees or parties, or permit such claims or controversies to proceed as a class action, collective action or any similar representative action." (*Id.*) The agreement divests the arbitrator of the authority to order class arbitration and forbids employees from "bring[ing] an[y] action on a class, collective, representative, or other similar basis." (*Id.*)

Accordingly, because the parties did not agree to class arbitration, the Court cannot rely on the severability provision in the arbitration agreement to compel Plaintiffs to class arbitration.[2]

## II. Motion to Stay

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citing *Landis v. N. Am.Co.*, 299 U.S. 248, 254 (1936)). In determining whether to grant a motion to stay, "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005). These interests include: (1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying

---

[2] The Court does not find it necessary to reach the remaining arbitration-specific issues raised by the parties, including, *inter alia*, whether Defendant's arbitration agreement also violates the Norris LaGuardia Act and the FLSA, (Dkt. No. 20 at 18–19; Dkt. No. 22 at 5–6), and whether the arbitration agreements are unconscionable, (Dkt. No. 20 at 25–27).

or complicating of issues, proof, and questions of law which could be expected to result from a stay. *Id.* The burden is on the moving party. *Clinton*, 520 U.S. at 708. Defendant summarily requests that the Court stay this case pending the Supreme Court's decision regarding *Morris*, stating that a decision "can be expected within a matter of months." (Dkt. No. 9-1 at 18; Dkt. No. 22 at 8.) Plaintiffs oppose Defendant's request. (Dkt. No. 20 at 27–31.)

As a starting matter, the Supreme Court recently granted certiorari in *Morris* on January 13, 2017. *Ernst & Young, LLP v. Morris*, 137 S. Ct. 809 (2017). There is no indication that a decision will be issued in a matter of months. Furthermore, Defendant makes no attempt to justify a stay, other than stating that the Supreme Court's ruling in *Morris* is forthcoming. Defendant has not satisfied its burden in moving for a stay. *See Clinton*, 520 U.S. at 708.

As to the first factor, Plaintiffs have shown that they will face damage from the granting of a stay. Specifically, Plaintiffs assert that a stay pending the Supreme Court's decision would prejudice Plaintiffs by delaying the opt-in, notice and consent, and conditional class certification procedures for the instant putative FLSA class action. (Dkt. No. 20 at 27–31.) The two-year statute of limitations period would continue to run, and evidence may be lost during the stay. (*Id.*) As to the second factor, Defendant has proffered no argument showing that it will incur hardship or inequity from being required to go forward in the instant litigation. And as to the third factor, while a ruling in *Morris* would directly weigh in on whether this action may proceed in federal court, the sum of the three stay factors do not weigh in favor of a stay.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to compel arbitration and **DENIES** Defendant's request for a stay.

**IT IS SO ORDERED.**

/ / / /

Dated: May 3, 2017

_____
Hon. Gonzalo P. Curiel
United States District Judge