UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEAL PATAKY, JESSICA CLEEK, and LAUREN MICHELSON, individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>THE BRIGANTINE, INC., a California corporation,<br><br>Defendant. | Case No.: 3:17-cv-00352-GPC-AGS<br><br>**ORDER GRANTING PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION, DIRECTING THE PARTIES TO SUBMIT A JOINT PROPOSED NOTICE FORM, AND DIRECTING LIMITED PRODUCTION OF EMPLOYEE INFORMATION**<br><br>**[ECF No. 12.]** |

Before the Court is Plaintiffs Neal Pataky, Jessica Cleek, and Lauren Michelson's (individually, "Pataky," "Cleek," or "Michelson"; collectively, "Plaintiffs") motion for an order (1) conditionally certifying part of this case as a Fair Labor Standards Act "collective action" and (2) providing notice to similarly situated employees. (Dkt. No. 12.) Defendant The Brigantine, Inc. ("Defendant" or "Brigantine") opposed the motion. (Dkt. No. 21.) Plaintiffs filed a reply. (Dkt. No. 23.) The Court deems this motion suitable for disposition without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having considered the parties' arguments and the applicable law, the Court **GRANTS** Plaintiffs' motion for conditional certification of a FLSA class; **DIRECTS** the parties to

1

submit a joint proposed Notice form in compliance with the Court's Order; and **DIRECTS** Defendant to produce to Plaintiffs the potential class members' names, addresses, employment dates, and employment identification numbers.

## BACKGROUND

On February 22, 2017, Plaintiffs filed the instant putative class action against The Brigantine, Inc., a California corporation which owns and operates multiple restaurants in San Diego County, including restaurants named Brigantine Seafood and Miguel's Cocina. (Dkt. No. 1, Compl. ¶ 4; Dkt. No. 12-2 at 54, Pls.' Ex. 4 at 52.) Since its inception in 1969, Defendant has grown to over 1,000 team members in over a dozen restaurants. (Dkt. No. 12-2 at 8–9, 11–13, Pls.' Ex. 2 at 6–7, 9–11.) Defendant employs individuals in the capacity of managers, servers, and kitchen staff in each of its restaurants. (Dkt. No. 12-6, Pataky Decl. ¶¶ 2–5; Dkt. No. 12-4, Cleek Decl. ¶¶ 2–4; Dkt. No. 12-5, Michelson Decl. ¶¶ 2–4; Pls.' Ex. 2 at 9–11.)

Defendant employed Pataky between 2005 and November 2016. (Dkt. No. 12-6, Pataky Decl. ¶¶ 2–4.) From 2005 through 2008, Pataky worked at Zocalo Grille, Brigantine's Old Town location. (*Id.*) From 2008 through November 2016, Pataky worked at Brigantine Seafood in Coronado. (*Id.*) Pataky worked as a food server, bartender, a fill-in manager, and a trainer during his employment. (*Id.*) Between 2013 through November 2016, Pataky was a server on the wait staff. (*Id.*) Defendant employed Cleek between May 1, 2013 and June 1, 2016 at Brigantine Seafood in Coronado. (Dkt. No. 12-4, Cleek Decl. ¶¶ 2–3.) Cleek was a cocktail server for her first year of employment, and then became a food server on the wait staff for the remainder of her employment. (*Id.*) Defendant employed Michelson between May 2013 and February 2016 at Brigantine Seafood in Coronado. (Dkt. No. 12-5, Michelson Decl. ¶¶ 2–3.) Michelson was a cocktail server for her first year of employment, and then became a food server on the wait staff for the remainder of her employment. (*Id.*)

Plaintiffs allege that Defendant maintained an unlawful "tip pooling" policy, under which Plaintiffs, who were employed as servers at Defendant's restaurants and who

2

3:17-cv-00352-GPC-AGS

earned and were paid tips from Defendant's customers, had to "tip out" significant portions of their earned tip income to other employees who do not provide direct table service to customers, such as Defendant's kitchen staff. (Compl. ¶¶ 8–9.) In their Complaint, Plaintiffs assert three claims for relief based on Defendant's alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 203(m) and 206, (Compl. ¶¶ 15–22); unfair business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, (Compl. ¶¶ 23–28); and unlawful business practices in violation of the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*, (Compl. ¶¶ 29–34).

On March 24, 2017, Plaintiffs filed the instant motion. (Dkt. No. 12.) Plaintiffs seek an order conditionally certifying an FLSA collective action class under 29 U.S.C. 216(b) and providing notice to the FLSA collective action class. (Dkt. No. 12-1 at 6–7.) Plaintiffs' proposed FLSA collective action class includes: "All current or former employees of The Brigantine, Inc. who have worked on and after February 22, 2014 as 'servers,' including but not limited to under job titles of food servers, cocktail lounge servers, dining room servers, and bartenders." (Dkt. No. 12 at 2.) Plaintiffs' motion solely concerns Count One of their Complaint. (Dkt. No. 12-1 at 6–7.) At a later date, Plaintiffs will move for certification of an opt-out class pursuant to Federal Rule of Civil Procedure 23 for Counts Two and Three, which are brought under the UCL.

Defendant opposed the motion on April 14, 2017, (Dkt. No. 21), and Plaintiffs filed a reply on April 28, 2017, (Dkt. No. 23).

## LEGAL STANDARD

Section 16(b) of the FLSA, 29 U.S.C. § 216(b), gives employees the right to bring a private cause of action on their own behalf and on behalf of "other employees similarly situated" for specified violations of the FLSA. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1527 (2013). A FLSA suit brought on behalf of other employees is known as a "collective action." *See id.* (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–170 (1989)). "No employee shall be a party plaintiff to any such action

unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Unlike a class action brought under Federal Rule of Civil Procedure 23, "a FLSA case cannot become a collective action unless other plaintiffs affirmatively opt in by giving written and filed consent." *Smith v. T-Mobile USA Inc.*, 570 F.3d 1119, 1122–23 (9th Cir. 2009).

Determining whether a collective action is appropriate is within the discretion of the district court. *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004). "To maintain an opt-in class under § 216(b), plaintiffs must demonstrate that they are 'similarly situated.'" *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001); 29 U.S.C. § 216(b). Plaintiffs bear the burden of showing that they and the proposed class are similarly situated. *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 535–36 (N.D. Cal. 2007).

Courts in the Ninth Circuit have used a two-tiered approach adopted by the Fifth, Tenth, and Eleventh Circuits for determining when employees are "similarly situated." *See Stiller v. Costco*, No. 09-CV-2473-H BLM, 2010 WL 5597272, at *2–3 (S.D. Cal. Dec. 13, 2010) (citing cases). During what is often referred to as a "notice stage" determination, a court first determines, "on an *ad hoc* case-by-case basis, whether plaintiffs are 'similarly situated.'" *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (internal citation omitted). At this first stage, a court requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1102–03 (internal citations and quotation marks omitted). Under this lenient standard, courts require plaintiffs to "show that there is some factual basis beyond the mere averments in their complaint for the class allegations." *Adams*, 242 F.R.D. at 536 (internal citation and quotation marks omitted). "The standard for certification at this stage is a lenient one that typically results in certification." *Hill v. R+L Carriers, Inc.*, 690 F. Supp. 2d 1001, 1009 (N.D. Cal. 2010). This leniency results in part from the fact that, unlike class actions under Rule 23, there are no absent class members to protect, and there is limited evidence available at the

initial pleading stage. *See Hensley v. Eppendorf N. Am., Inc.*, No. 14-CV-419-BEN NLS, 2014 WL 2566144, at *2–3 (S.D. Cal. June 6, 2014).

The second determination is made at the conclusion of discovery, usually on a motion for decertification by the defendant, utilizing a more stringent standard for "similarly situated." *Thiessen*, 267 F .3d at 1102. At the second stage, the court reviews several factors, including the disparate factual and employment settings of the individual plaintiffs; the various defenses available to the defendant which appear to be individual to each plaintiff; fairness and procedural considerations; and whether the plaintiffs made any required filings before instituting suit. *Id.* at 1103.

Employees must receive "accurate and timely notice concerning the pendency of the class action, so they can make informed decisions about whether to participate." *Hoffman-LaRoche,* 493 U.S. at 170. Accordingly, under § 216(b), courts have "the requisite procedural authority to manage the process of joining multiple parties in a manner that is orderly, sensible, and not otherwise contrary to statutory commands or the provisions of the Federal Rules of Civil Procedure." *Id.* Courts are therefore empowered to authorize notice and order the production of employee information. *See id.* at 169–74.

## DISCUSSION

### I. Conditional Certification of FLSA Collective Action

Plaintiffs' proposed FLSA collective action class includes: "All current or former employees of The Brigantine, Inc. who have worked on and after February 22, 2014 as 'servers,' including, but not limited to, under job titles of food servers, cocktail lounge servers, dining room servers, and bartenders." (Dkt. No. 12 at 2.) Defendant does not oppose Plaintiffs' formulation of the class.

However, Defendant opposes Plaintiffs' motion for conditional certification on grounds that (1) there is no corporate or company-wide policy regarding tip pooling or tip distributions; (2) the "Tipping Suggestions" sheet does not reflect a company-wide policy, but rather reflects a suggestion created by two employees; and (3) Plaintiffs have not proffered evidence regarding tip pooling at any of Defendant's restaurants, other than

5

3:17-cv-00352-GPC-AGS

Brigantine Seafood in Coronado, during the relevant class period. (Dkt. No. 21 at 5–14.) Defendant contends that if conditional certification is granted, the Court should narrowly certify a class limited only to the Brigantine Seafood restaurant in Coronado. (*Id.* at 13–14.)

Plaintiffs first assert that Defendant treats all servers across its restaurants similarly. (Dkt. No. 12-1 at 8–9.) In support of this assertion, Plaintiffs point to Brigantine's Employee Handbook, dated August 2012 and revised in September 2014, which provides policies, rules, and guidelines for employees across Brigantine's restaurants. (Dkt. No. 12-2 at 4–51, Pls.' Ex. 2 at 1–49.) Plaintiffs also point to the identical forms Brigantine distributed to employees, including the Employment At-Will and Arbitration Agreement forms, Employee Handbook Acknowledgment forms, and Anti-Harassment/Discrimination Policy acknowledgment forms. (Dkt. No. 9-2, Carl Dec. ¶¶ 1–3, Exs. A–F.) The Court finds that at this initial stage, Plaintiffs have met their burden to show that Defendant's policies are generally not piecemeal, but uniform across all restaurants. (*See also* Dkt. No. 21-5, Carl Decl. ¶ 4 ("[P]olicies are generally issued from the Brigantine's corporate offices.").) While Defendant cites the "Tip Declaration Policy" guidelines in the Employee Handbook as evidence that there is no corporate policy regarding tip pooling, the "Tip Declaration Policy" guidelines, which instruct employees to keep notes "on all amounts tipped out to other employees," (Dkt. No. 12-2 at 34, Pls.' Ex. 2 at 32), lends support to Plaintiffs' assertion that any policy on tipping, even if not documented in the Employee Handbook or in official corporate memoranda, may likewise be uniform at all locations.

Plaintiffs also assert that the nature of the work performed by Brigantine servers is similar among wait staff, dining room servers, cocktail servers, and bartenders, as all of these employees serve customers food and beverages, for which they received customer tips. (Dkt. No. 12-1 at 9; Dkt. No. 12-6, Pataky Decl. ¶¶ 4–5; Dkt. No. 12-4, Cleek Decl. ¶¶ 4–5; Dkt. No. 12-5, Michelson Decl. ¶¶ 4–5.) Defendant does not dispute this assertion. The Court finds that at this initial stage, Plaintiffs have carried their burden to

show that employees employed as "servers" are similarly situated in terms of the work they perform and their receipt of tips from customers.

Plaintiffs further assert that Brigantine's mandatory and enforced tip pooling policy required servers to tip out portions of their earned tip income to kitchen staff who do not provide direct table service to customers, and that the tip pooling policy for servers was similar or identical across all of Brigantine's restaurants. (Dkt. No. 12-1 at 9–10.) In support of this assertion, Plaintiffs point to a "Tipping Suggestions" form, which features a Brigantine Seafood logo on the top of the page and a table of percentage breakdowns for "tipping out" to other staff. (Dkt. No. 12-2 at 3, Pls.' Ex. 1.) Plaintiffs testify that this form, or similar versions of it, were posted in the restaurant during their employment. (Dkt. No. 12-6, Pataky Decl. ¶¶ 4, 7–9; Dkt. No. 12-4, Cleek Decl. ¶¶ 6–8; Dkt. No. 12-5, Michelson Decl. ¶¶ 6–8.) Pataky specifically testifies that from approximately 2008 until 2012, he attended regular "training meetings" at Brigantine's company headquarters on a monthly or bimonthly basis. (Dkt. No. 12-6, Pataky Decl. ¶ 4.) Trainers from other Brigantine restaurants, including Brigantine Seafood, Zocalo Grille, and Miguel's Cocina, attended these training meetings. (*Id.*) At these meetings, employees occasionally discussed Brigantine's tip pooling policy for servers, including the fact that tip pooling was required in all of the restaurants and included kitchen staff. (*Id.*)

Pataky testifies that when he first began working at Brigantine, other employees informed him that there was a mandatory tip pooling policy which required him to tip out part of him earned income to other Brigantine employees in the restaurant, including kitchen staff. (Dkt. No. 12-6, Pataky Decl. ¶¶ 4, 7–9.) Copies of a "Tipping Guidelines" sheet and a "Tipping Suggestions" sheet were posted in various places in the restaurant. (*Id.*) Managers regularly instructed Pataky and other servers to follow the tip pooling policies; if he or other employees did not do so, managers would inquire, "Where are your tips?" (*Id.*) On at least a dozen occasions, when Pataky did not automatically pay out his tips to the kitchen staff at the end of a shift, a manager approached him and asked him to tip out. (*Id.*) Based upon his observations, Pataky attests that other employees

7

also believed that tip pooling was required. (*Id.*) Brigantine kept records of his tips and always collected tips from him to distribute to the kitchen staff. (*Id.*) Cleek and Michelson corroborate these observations and testify similarly. (Dkt. No. 12-4, Cleek Decl. ¶¶ 6–8; Dkt. No. 12-5, Michelson Decl. ¶¶ 6–8.)

In response, Defendant points out that Plaintiffs lack evidence regarding policies at other restaurants owned and operated by Brigantine—all three Plaintiffs provided evidence of managers requiring servers to contribute to a tip pool with kitchen staff at the Coronado location only. (Dkt. No. 21 at 9.) Defendant discounts Pataky's testimony by observing that Pataky worked at a different location between 2005 and 2008, outside of the relevant class period in this case, and that he stopped attending training meetings in 2012, also outside of the class period. (*Id.*)

Defendant also proffers a declaration from Deanne Carl, Brigantine's Chief Financial Officer, testifying that:

> [P]olicies are generally issued from the Brigantine's corporate offices. But, to my recollection, we have never issued or distributed any policy or rule requiring Servers to pool or share their tips with kitchen employees. The only policy we have issued regarding tips is that tipped employees must report all tips for taxation purposes. The only other messaging regarding tips, to my knowledge, is that management can<u>not</u> direct employees an how to disburse, pool, or distribute their tips.

(Dkt. No. 21-5, Carl Decl. ¶¶ 3–4.) Defendant also proffers declarations from Christina Gerena and Kayla Kuhn, two employees who worked at Defendant's Coronado and Del Mar locations. Gerena asserts that she has never seen anyone in management require or suggest to employees how tips received by servers should be pooled or distributed to anyone else. (Dkt. No. 21-3, Gerena Decl. ¶ 3.) Gerena testifies that she is aware that the Coronado location has a tip suggestion sheet, but that to her understanding, the sheet was created by a trainer, not by management, and that management has not enforced the sheet. (*Id.* ¶ 4.) In 2016, Gerena and Kuhn adjusted the tip suggestion sheet with the input of other servers—Gerena maintains that the sheet is a guideline, not a

requirement, and that servers have declined to tip out to other employees without consequence. (*Id.* ¶¶ 5, 8.) The sheet Gerena created is the exhibit Plaintiffs attached to their motion. (*Id.* ¶ 6.) Kuhn corroborates Gerena's testimony and testifies similarly. (Dkt. No. 21-4, Kuhn Decl. ¶¶ 2–9.)

While Defendant has proffered evidence disputing Plaintiffs' allegations and affidavits, Defendant's argument goes to the merits of Plaintiffs' claims. The Court declines to visit the merits at this early stage. *See Adams*, 242 F.R.D. at 539. "All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Hill*, 690 F. Supp. 2d at 1009 (internal citation and quotation marks omitted). As Plaintiffs observe, Defendants' evidence does not negate the evidence proffered by Plaintiffs, particularly Plaintiffs' testimony regarding personal experiences with managers requiring Plaintiffs to tip out to kitchen staff. That the corporate office may not have issued a formal company-wide policy on mandatory tipping pools does not negate the possibility that such an undocumented policy exists. That Kuhn and Gerena, who worked at two of Defendant's restaurants, testified that they adjusted the tipping suggestions sheet and believed that the suggestions were employee-initiated does not shed light on the existence of similar policies at other restaurants or prove that the suggestions were in fact not mandatory in practice. At this stage, the Court need not resolve these questions, particularly where Plaintiffs' allegations are not based on conclusory allegations or mere speculative belief.

Plaintiffs have also provided an identifiable legal and factual nexus binding together various claims of the proposed class—a uniform or substantially similar tipping policy across Defendant's restaurants that violates 29 U.S.C. §§ 203(m) and 206 by including in the tipping pool employees who do not customarily and regularly receive tips. While Pataky's testimony regarding the existence of similar tipping policies across Defendant's restaurants stems from personal knowledge acquired between 2008 and

2012, the fact that such policies were allegedly maintained across all restaurants for four years does not render implausible, but rather lends support to Plaintiffs' claim that such policies have continued into the relevant class period. Moreover, hearing the collective claims together promotes judicial efficiency. Indeed, if Defendant is correct that none of the restaurants, outside of Brigantine's Coronado location, maintained illegal tip pooling policies, Defendant may later rebut Plaintiffs' allegations of a company-wide policy across the class by way of a motion for decertification, other dispositive motions, or trial.

At this stage, Plaintiffs have met their lenient burden to show that they are similarly situated to potential class members. The Court, in its discretion, **GRANTS** Plaintiffs' motion for concludes that conditional certification of a FLSA collective action class.

**II. Notice**

Plaintiffs propose Notice and Consent forms to distribute to the FLSA opt-in class. (Dkt. No. 12-2 at 55–56, Pls.' Exs. 5–6.) Defendant objects to certain content in the proposed Notice. (Dkt. No. 21 at 15–17.)

Defendant objects to the following three statements, which describe tip pooling without identifying the salient alleged violation of 29 U.S.C. §§ 203(m) and 206:

> Plaintiffs' claim is that they were required to tip pool with other employees in violation of federal law and California law, and all servers are entitled to repayment of tips by Brigantine.

> You are receiving this notice because Brigantine's records indicate that you have worked as a server for Brigantine at some time since February 22, 2014 and may have been a part of a tip pool with other employees, and your rights regarding the federal laws in the case may be affected.

> If you want to join the lawsuit and assert your rights under the federal law for tip pooling to try and recover money that may be owed to you, you must: 1) return the enclosed form to the Plaintiffs' lawyers so they can file it with the Court, or 2) file a request to join by yourself or through your own attorney at your expense.

(Dkt. No. 12-2 at 55, Pls.' Ex. 5.)

The Court agrees that the language about tip pooling is overbroad. *See* 29 U.S.C. § 203(m) ("[T]his subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips."); *Oregon Rest. & Lodging Ass'n v. Perez*, 816 F.3d 1080, 1082 (9th Cir. 2016) ("Under section 203(m), a tip pool is valid if it is comprised exclusively of employees who are 'customarily and regularly' tipped."). Plaintiffs should alter the language to include the distinction between employees who are customarily and regularly tipped. For example: "Plaintiffs' claim is that they were required to tip pool with other employees who are not customarily and regularly tipped, such as kitchen staff, in violation of federal law and California law, and all servers are entitled to repayment of tips by Brigantine."

Defendant also objects to the following statement: "The Court has made a preliminary determination that the Plaintiffs' federal law claim in the lawsuit may proceed and include other servers who may want to join the case." (Dkt. No. 12-2 at 55, Pls.' Ex. 5.) Defendant contends that the language used in the statement suggests that the Court agrees with Plaintiffs' claims.

The Supreme Court has cautioned that "[i]n exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann-La Roche*, 493 U.S. at 174. Out of an abundance of caution, the Court proposes the following changes:

> The Court is allowing other servers to opt in to join the Plaintiffs' federal law claim. Brigantine may later challenge whether the Plaintiffs' federal law claim may continue to proceed as a collective action. The Court has not yet made a determination about whether the rest of the case will proceed as a class action to include Plaintiffs' state law claims. The Court has also not yet determined whether Brigantine has violated any laws. Plaintiffs will be required to prove their case at a later date.

The Court also observes that Plaintiffs have not included a deadline for potential class members to opt in. "Where a district court authorizes the named plaintiffs in a

FLSA collective action to send notice to all potential plaintiffs, it may set a deadline for plaintiffs to join the suit by filing opt-in consent forms." *Stickle v. SCI W. Mkt. Support Ctr., L.P.*, No. 08-083-PHX-MHM, 2009 WL 3241790, at *8 (D. Ariz. Sept. 30, 2009) (citing *Hoffmann La Roche*, 493 U.S. at 172; *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000)). A 60-day deadline or other reasonable timeframe agreeable to the parties would serve the interests of efficiency and judicial economy by minimizing the potential for later collateral disputes over the timeliness of opt-in attempts. *See id.*

While Plaintiffs insist that Defendant's request to meet and confer about the language of the proposed Notice form is purely dilatory, (Dkt. No. 23 at 10), the Court disagrees. The Court directs the parties to meet and confer in good faith and file a joint proposed final Notice form that addresses the above concerns no later than seven (7) days after the entry of this Order.

### III. Production of Employee Information

Plaintiffs request the Court to order Defendant to provide Plaintiffs' counsel with the names, current or last known address, telephone numbers, dates of employment, and employee identification numbers for all servers who have been employed by Defendant from February 22, 2014 through the date of entry of this Order. (Dkt. No. 12-1 at 15.) Plaintiffs' counsel maintain that they will use such information for this case only, and for the purpose of contacting individual members to provide them with the Notice and Consent forms, at Plaintiffs' cost. (*Id.* at 15–16.) Plaintiffs seek an order requiring Defendant to post the Notice within all of Brigantine's restaurant locations in conspicuous locations, in the same areas in which it is required to post other employee notices and postings. (*Id.*)

Defendant opposes the method of effectuating Plaintiffs' request, asserting that the information sought should be provided to a third-party administrator or other neutral third-party without an interest in the case. (Dkt. No. 21 at 14–15.) Plaintiffs respond that

12

3:17-cv-00352-GPC-AGS

use of a third-party administrator will delay the notice process and will involve additional expense. (Dkt. No. 23 at 8–9.)

The Court begins by noting that courts may, under § 216(b), direct a defendant employer to disclose the names and addresses of potential class members. *See Hoffmann-La Roche*, 493 U.S. at 170 (holding that "[t]he District Court was correct to permit discovery of the names and addresses of the discharged employees" for purposes of notice under § 216(b)); *Tomassi v. City of Los Angeles*, No. CV 08-1851 DSF SSX, 2008 WL 4722393, at *3 (C.D. Cal. Oct. 24, 2008) (ordering defendant in an FLSA collective action to produce to plaintiffs names and addresses of potential class members over defendant's privacy objections). While production of such information to a third-party administrator is certainly permissible, Defendant cites cases wherein there was no dispute over production of the requested information to a third-party administrator. *See Wren v. Rgis Inventory Specialists*, No. C-06-05778JCS, 2007 WL 4532218, at *9 (N.D. Cal. Dec. 19, 2007) (directing production of contact information to third-party administrator where plaintiffs did not oppose defendant's request to do so); *Kellgren v. Petco Animal Supplies, Inc.*, No. 13CV644 L KSC, 2015 WL 5167144, at *6 (S.D. Cal. Sept. 3, 2015) (same). Defendant has not established why such discoverable information may only be produced by a third-party administrator.

The Court expresses concern regarding Plaintiffs' request for production of potential class members' telephone numbers and the corresponding potential for unwarranted intrusions of privacy. Plaintiffs have not provided any reason why such information is necessary to effectuate notice, where mailing the Notice forms and posting copies in Defendant's restaurants would clearly otherwise suffice. *See Stickle v. SCI W. Mkt. Support Ctr., L.P.*, No. 08-083-PHX-MHM, 2009 WL 3241790, at *7 (D. Ariz. Sept. 30, 2009) (denying plaintiffs' request for the telephone numbers and social security numbers of proposed class members, where notice was to be accomplished via first class mail).

The Court accordingly orders Defendant to produce the potential class members' names, addresses, employment dates, and employment identification numbers to Plaintiffs no later than fourteen (14) days after the entry of this Order. To the extent Plaintiffs decide that they nonetheless need potential class members' telephone numbers to effectuate notice, Plaintiffs are directed to meet and confer with Defendant to address Defendant's concerns and formulate an actionable plan for how to proceed (*e.g.*, proposing a protective order for use of such information). If the parties remain unable to reach a conclusion within twenty-one (21) days of this Order, they are directed to submit a joint statement of no more than ten pages to the Court with their respective positions, plans, and substantiating authority.

Finally, Defendant does not oppose Plaintiffs' request to post the Notice form in all of its restaurant locations. The Court finds that this form of notice is proper and tailored to serve its purpose. *See, e.g.*, *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 492 (E.D. Cal. 2006) (ordering defendant employer to post the notice in employees' workplaces). Defendant is accordingly ordered to post the finalized Notice form in each of its restaurants in the same areas in which it is required to post other employee notices and postings.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for conditional certification of the following FLSA collective action class: "All current or former employees of The Brigantine, Inc. who have worked on and after February 22, 2014 as 'servers,' including, but not limited to, under job titles of food servers, cocktail lounge servers, dining room servers, and bartenders."

The Court **DIRECTS** the parties to meet and confer regarding the Notice form and submit a joint proposed final Notice form to the Court within seven (7) days of entry of this Order.

The Court **DIRECTS** Defendant to produce potential class members' names, addresses, employment dates, and employment identification numbers to Plaintiffs no later than fourteen (14) days after the entry of this Order.

**IT IS SO ORDERED.**

Dated: May 8, 2017

Hon. Gonzalo P. Curiel
United States District Judge