UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEAL PATAKY, JESSICA CLEEK, and LAUREN MICHELSON, individually, and on behalf of others similarly situated,,<br><br>Plaintiffs,<br><br>v.<br><br>THE BRIGANTINE, INC., a California corporation,<br><br>Defendant. | Case No.: 17-cv-00352-GPC-AGS<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>**[DKT. NO. 78]** |

Pending before the Court is Plaintiffs' Motion for Preliminary Approval of Settlement. Dkt. No. 78. On May 25, 2018, this Court held a hearing on this motion and requested that plaintiff file supplemental briefing regarding its concerns on publication notice and the overall reach percentage of the class. Dkt. No. 82. On June 15, 2018, Plaintiffs filed the Declaration of Timothy G. Williams in response to the Court's concerns. Dkt. No. 83. Williams asserted that the proposed class administrator informed him that current mailing addresses could be obtained for all class members through the use of the former employee's social security number, which Brigantine had been required to obtain and retain under state and federal law. *Id.* Accordingly, the Court is satisfied

1

17-cv-00352-GPC-AGS

that the settlement now provides adequate reach and notice to the class. Consequently, having considered the briefing, the argument of counsel, and counsel's supplemental declaration the Court will **GRANT** Plaintiff's Motion for Preliminary Approval of Settlement. Dkt. No. 83.

This case is involves a wage-and-hour class action. On February 22, 2017, Plaintiffs Neal Pataky, Jessica Cleek, and Lauren Michelson filed a Complaint alleging that they and other servers were paid tips from Brigantine's customers, but that Brigantine imposed a mandatory "tip pooling" policy in all restaurants dating back a decade, requiring servers to "tip out" to other employees, including those that did not provide direct table service in violation of Federal and California law. Reynolds Decl. ¶ 8.

The Brigantine Corporation, Inc. ("Defendant") owns at least a dozen restaurants throughout San Diego County, including Brigantine Seafood and Miguel's Cocina, each of which have multiple locations. Reynolds Decl. ¶ 6. Defendant currently has over 1,000 team members. *Id.* Between 2005-2016, Brigantine employed Neal Pataky in various roles including dining room server, bartender, and as a member of the wait staff. Brigantine employed Plaintiff Jessica Cleek and Lauren Michelson as a cocktail server and wait staff member between 2013-2016. *Id.* ¶ 7. Plaintiffs allege that Defendant violated the Fair Labor Standards Act ("FLSA") prohibition against forcing employees to share tips with employees who do not provide direct table service to customers in places where the kitchen staff does not customarily and regularly receive tips. *Oregon Restaurant and Lodging Ass'n v. Perez*, 816 F.3d 1080, 1090 (9th Cir. 2016). Plaintiffs further allege that this violation is a predicate violation of the California Business & Professions Code, section 17200, et seq. ("Unfair Competition Law" or "UCL").

On March 24, 2017, Plaintiffs filed a motion seeking an order under 29 U.S.C. section 216(b) to "conditionally certify" an FLSA Collective Class Action. Dkt. No. 12. The Court granted Plaintiffs' motion to certify the FLSA class as to:

> All current or former employees of The Brigantine, Inc. who have worked on and after February 22, 2014 as "servers" including but not limited to under job titles of food servers, cocktail lounge servers, dining room servers, and bartenders. Notices were sent to over 900 potential class members and over 120 individuals joined the FLSA case.

Reynolds Decl. ¶ 10. Notices were sent to over 900 potential class members in 2017 and to date over 120 individuals joined the FLSA case as FLSA class members. *Id.* Following that Order, Plaintiffs were preparing to file a class certification motion for the FRCP Rule 23 opt out class when this settlement was obtained. Reynolds Decl. ¶ 11.

## A.   PROPOSED SETTLEMENT[1]

Plaintiffs and Defendants negotiated a proposed settlement that will benefit approximately 800 Settlement Class members with monetary payments wherein Defendant will pay $550,000 without refund or reversion to the Settlement Class.

The Settlement Agreement contemplates that Defendant will pay certain compensation to settle the claims of Plaintiffs and all other servers within the class period and includes (1) all members of the FLSA Collective Action who have filed Consent to Join forms and (2) all other servers within the scope of the potential Rule 23 Class Action defined as:

> All current or former employees of The Brigantine, Inc. who have worked anytime between February 22, 2013 and April 30, 2017 as "servers," including but not limited to under job titles of food servers, cocktail lounge servers, dining room servers, and bartenders.

The Monetary Compensation consists of $550,000 without refund or reversion. The Settlement Amount is inclusive and in satisfaction of all requests for relief and

---

[1] A copy of the Proposed Settlement Agreement is attached as Exhibit 1 to the Declaration of Stephanie Reynolds. Dkt. No. 78-2 at 9.

payments to Plaintiffs and the Settlement Class arising from and related to this case including all claims for damages, interest, attorneys' fees, etc. Ex. 1 at 14.

### B. LEGAL STANDARD FOR COURT APPROVAL

The Ninth Circuit maintains a "strong" judicial policy favoring the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). The policy of the federal courts is to encourage settlement before trial. *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989). Federal Rule of Civil Procedure 23(e) first "require[s] the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). To grant preliminary approval of a class action settlement, a court need only find that the settlement is within "the range of reasonableness" to justify publishing and sending notice of the settlement to class members and the scheduling of a final approval hearing. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d. 1078, 1079-80 (N.D. Cal. 2007). Because class members will subsequently receive notice and have an opportunity to be heard on the settlement, this Court need not review the settlement in detail at this juncture. *In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM JMA, 2009 WL 995864, at *3 (S.D. Cal. Apr. 13, 2009).

After review of the proposed settlement, the Court determines that there is adequate reason to provide notice to class members of the proposed settlement and to schedule a fairness hearing.

#### 1. Fairness Determination

The Court must make a determination of whether the class-action settlement is "fair, reasonable, and adequate" pursuant to Rule 23(e)(1)(C). "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Hanlon*, 150 F.3d at 1026. The Court evaluates whether "(1) the proposed

settlement appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval. *Dilts v. Penske Logistics, LLC*, No. 08-cv-318-CAB-BLM, 2014 WL 12515159, at *2 (S.D. Cal. July 11, 2014).

### a) Result of Non-Collusive Negotiations

A settlement is presumed to be fair if reached in arms-length negotiations after relevant discovery has taken place. *Cohorst v. BRE Prop., Inc.*, 2011 WL 7061923, *12 (S.D. Cal. Nov. 14, 2011) (citing *In re Immune Response Sec. Litig.*, 497 F. Supp. 1166, 1171 (S.D. Cal. 2007). Here, the settlement resulted after Defendant produced discovery responses and class data relating to wage and hour issues. Reynolds Decl. ¶ 12. The parties reached a settlement after extensive negotiations with the assistance of the Honorable Magistrate Judge Schopler's "mediator's proposal." *Id.* ¶ 12. In particular, the Court takes note that the parties entered into the agreement only after a second Early Neutral Evaluation. *See* Reynolds Decl. ¶ 12. Consequently, this factor weighs strongly in favor of approval.

### b) No Obvious Deficiencies

The Court concludes that there are no obvious deficiencies to the settlement finding that the settlement appears to offer Settlement Class members a substantial portion of the tip income they were deprived of during their employment. The settlement appears to be a compromise between the strengths and weaknesses of plaintiff's case. Plaintiffs alleged that Brigantine faced possible liability between $500,000 to $520,000 in the case, as well as Attorneys' fees and costs that are recoverable under the FLSA. Plaintiffs, however, faced significant risk including a pending petition for a writ of certiorari before the Supreme Court to review the Ninth Circuit's decision in *Oregon Restaurant and Lodging Ass'n v. Perez*, 843 F.3d 355 (9th Cir. 2016). Furthermore, the

Department of Labor has indicated that it may revisit the tip pool issue at the core of this case. Furthermore, Plaintiffs' also assert that the issue of whether plaintiffs' claims must be subject to arbitration remains unsettled. These uncertainties create risk for plaintiffs which weighs in favor of preliminary approval of this settlement.

### c) Fairness to All Class Members

The proposed settlement does not appear to provide preferential treatment to Plaintiffs or any segment of the Settlement Class. Defendant has provided Plaintiffs' counsel with a spreadsheet that it contends shows all tips its managers collected from servers and re-distributed to kitchen staff from January 1, 2013 through April 30, 2017 totaling $529,956.34.[2] Reynolds Decl. ¶ 13. Defendant has also provided Plaintiffs' counsel with spreadsheet data that includes all tip money reported by each individual server within the class period. Reynolds Decl. ¶ 14. With this information which includes each individual server's reported tip total and the fact that servers' tips to kitchen staff were similar in percentage across Brigantine restaurants, each server can be assigned a pro rata "claim share" of the settlement fund. *Id.* Plaintiff asserts that this is the fairest method to determine claim shares because it is based on actual tip income reported and tip data available from Defendant. *Id.*

The Court concludes that the Settlement would be fair to all proposed class members and would not provide preferential treatment to any particular class members. Upon review and after hearing further about the calculation process at oral argument, it is apparent that all settlement Class members will be afforded with payments of tips in proportion to the amount of money reported and will receive payments representative of the differing amount of tips earned during their respective employment.

As such, the Court concludes that the Settlement would be fair to all proposed class

---

[2] The parties agree that this amount is overinclusive as it includes tips from January 1, 2013 to February 21, 2013 which precedes the Class Period.

6

17-cv-00352-GPC-AGS

members.

## 2. Class Certification

Before approving a class action settlement, the Court must determine whether the proposed class can be certified. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). The parties' settlement agreement complies with these requirements. Federal Rule of Civil Procedure Rule 23(a) establishes four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a).

Numerosity is satisfied if the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). Here, numerosity is established by the fact that nearly 800 Settlement Class Members have been identified by Defendant.

Commonality is satisfied if "there are any questions of fact or law common to the class." Fed. R. Civ. P. 23(a)(2). Commonality involves whether plaintiffs can show a common contention such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). Plaintiffs have adequately demonstrated commonality by showing that Defendant applies common operations, policies, and procedures in its restaurants. Defendant distributes identical forms to employees of all restaurants to review and execute. Reynolds Decl. ¶ 15. Moreover, the nature of the work is similar in that "servers" as defined in the class have the responsibility of serving customers food and beverages. Further, Defendants' tip pooling policy for servers was similar or identical for each of its restaurants. Reynolds Decl. ¶ 16. Accordingly, commonality is satisfied as the Settlement class members each suffered the same injuries and share similar questions of law and fact regarding their FLSA and UCL claims.

Typicality is satisfied if the class representatives' claims are typical of those of the Class. Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the

same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). The named plaintiffs' claims involve the same injury and same conduct that other injured plaintiffs in this class would face. Accordingly, the typicality requirement is satisfied.

Finally, the adequacy requirement is satisfied if the class representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit requires an evaluation of two factors: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. The named plaintiffs are adequate class representatives as they appear to share the goal to advance the interests of others in the class and have met with counsel to discuss the claims, supported discovery efforts, and attended two sessions of the Early Neutral Evaluations that directly led to this settlement. Adequacy is satisfied.

Finally, the settlement also satisfies the requirements of Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual members because the primary issue regarding Defendant's tip pooling policy is influenced by common facts identical to all settlement members. Second, a class action is a superior method for settlement of the action as each class members' claim is common to the class and the settlement ensures certainty.

## CONCLUSION

Based on the papers and pleadings submitted regarding Plaintiffs' motion, and the remaining papers, pleadings and Orders in this action, and for good cause shown, the Court **GRANTS** Plaintiffs' Motion for Preliminary Approval of Class Settlement.

IT IS ORDERED that the "Terms of Settlement for Resolution of Class/Collective Action and as Basis for Request for Court Approval," ("Agreement"), submitted as Exhibit 1 to the Declaration of Stephanie Reynolds, is given Preliminary Approval as a full and final resolution of all claims as described therein, conditioned upon the Court's Final Approval. The terms of the Agreement appear to be fair, fall within the range of reasonableness, and appropriate, subject to any objections that may be raised by the time of final approval.

IT IS FURTHER ORDERED that Plaintiffs Neal Pataky, Jessica Cleek, and Lauren Michelson are designated as Settlement Class Representatives for purposes of settlement and the Agreement.

IT IS FURTHER ORDERED that Plaintiffs' counsel, Timothy G. Williams and Stephanie Reynolds of *Pope, Berger & Williams, LLP*, are appointed as Class Counsel for purposes of settlement and the Agreement.

IT IS FURTHER ORDERED that Rust Consulting, Inc. is appointed to act as Settlement Administrator to fulfill the obligations as generally described in the Agreement and its March 12, 2018 proposal, submitted as Exhibit 2 to the Declaration of Timothy G. Williams.

IT IS FURTHER ORDERED that the Notice of Settlement of Class Action and Collective Action ("Notice"), submitted as Exhibit 4 to the Declaration of Stephanie Reynolds, is specifically approved for use in the process of providing notice to Settlement Class Members by Rust Consulting, Inc.

IT IS FURTHER ORDERED that, subject to final approval and identification of all Settlement Class members to whom Rust Consulting, Inc. confirms were sent Notice, the Settlement Class members will be bound by the Agreement and any determinations and judgments concerning the same, including the full and complete releases by Settlement Class members of the Class Claims (as that term is defined in the Agreement) which will

settle, resolve, and forever bar those claims.

IT IS FURTHER ORDERED that the proposal for allocation and distribution of the Settlement Amount (as that term is defined in the Agreement) as detailed in Plaintiffs' Memorandum of Points and Authorities in support of their motion is preliminarily approved for Notice. Such distribution and allocation includes:

1. A service payment to each Plaintiff as may be approved by the Court at final approval of Two Thousand Five Hundred Dollars for their representation of the Settlement Class, in addition to their respective settlement shares available to them as members of the Settlement Class.

2. Attorneys' fees to Class Counsel as may be approved by the Court at final approval of One Hundred Thirty-Seven Thousand Five Hundred Dollars, which represents 25% of the Settlement Amount.

3. Reimbursement of reasonable litigation costs actually incurred by Plaintiffs' counsel as may be approved by the Court at final approval, estimated to be approximately $1,500.00.

4. Costs of administration actually incurred by Rust Consulting, Inc. as may be approved by the Court at final approval, estimated to be approximately $18,556.00.

5. Distribution of the balance of the Settlement Amount to Settlement Class members to occur per Court Order all at once in a single distribution after final approval. Payments to Settlement Class members will be Fifty Percent as W-2 wages and Fifty Percent as non-taxed penalties. Taxes will be withheld on any wage portions paid to Settlement Class members by Rust Consulting, Inc., and the employer's share of payroll taxes will be paid from the Settlement Amount.

IT IS FURTHER ORDERED that the following Scheduling Order shall apply for continued case management and administration:

1. Defendant, THE BRIGANTINE, INC. ("Defendant"), shall comply with its

obligations under the Agreement, including its obligations to provide Settlement Class member data to Rust Consulting, Inc., and to pay the Settlement Amount to a qualified settlement fund established and maintained by Rust Consulting, Inc. pending final approval.

2. Notice to the Settlement Class shall be formatted as necessary by Rust Consulting, Inc. as four printed pages in no smaller than 12-point font, including completing all blank spaces in the Notice in accordance with this Order, and mailed to all Settlement Class members identified by Defendant by first class mail within **fourteen days** of receipt of the complete Settlement Class member data from Defendant. The Notice period for exclusion requests and comments/objections shall be **sixty days** from the original date of mailing, for a Settlement Class member to have returned or postmarked for return a comment, objection, or request for exclusion. Rust Consulting, Inc. shall continue to re-mail Notices on a rolling basis from returned mail up to ten days before the end of the Notice period. Notice to Class Members will not be undertaken by any other means.

A. Any Settlement Class member who wishes to object or comment must either file a written objection with a statement of reasons with the Court, or file with the Court a notice of intent to appear at the Final Approval hearing. All comments/objections/notices must be signed and set forth the name, address, last four digits of SSN, telephone number, and the name and number of the case. Any person who fails to either provide a timely written objection or notice of intent to appear and speak at the Final Approval hearing will be precluded from making such objection or opposition. Persons may not opt out and object; any person who opts out has no right to comment on the settlement. If a person objects and the objection is overruled, he/she will be bound by the settlement and will not be allowed to opt out.

B. Any Settlement Class member who wishes to be excluded from the

11

settlement must return a written request for exclusion/opt out. To be valid, an opt out request must the full name (printed), address, last four digits of SSN, telephone number, the name and number of the case and address, a statement requesting to be excluded from the class, and a signature.

3. The hearing on fairness and final approval will be **November 2, 2018, at 1:30 p.m.** Plaintiffs shall file a motion for final approval of settlement, and a companion motion for attorneys' fees and service award fees on or before **September 14, 2018.**

IT IS FURTHER ORDERED that, pending a hearing on fairness and final approval of the settlement, all other pending dates and deadlines are **VACATED**, and the case is otherwise **STAYED**, except as it relates to settlement and this Order.

**IT IS SO ORDERED.**

Dated: June 18, 2018

Hon. Gonzalo P. Curiel
United States District Judge