# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEAL PATAKY, JESSICA CLEEK, and LAUREN MICHELSON, individually, and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br> v.<br><br>THE BRIGANTINE, INC., a California corporation,<br><br>    Defendant. | Case No: 3:17-cv-352 GPC (AGS)<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**<br><br>**[ECF No. 91.]** |

On December 17, 2018, Plaintiffs Neal Pataky, Jessica Cleek, and Lauren Michelson (collectively, "Plaintiffs"), individually, and on behalf of others similarly situated, filed a Motion for Final Approval of Class Settlement (ECF No. 91) including the conditionally certified Fair Labor Standards Act "Collective Action" class (ECF No. 25) and the remaining "class action" claims in Plaintiffs' Complaint (ECF. No. 1), and inclusive of approval of Service Fees and Attorneys' Fees and Costs related to the settlement. Plaintiffs' motion was set for hearing on January 14, 2019.

No opposition was filed. No comments or objections were filed or served

by any class member opposing the settlement. Two class members requested exclusion. No one appeared at the time of the hearing to oppose Plaintiffs' motion. Based on the papers and pleadings submitted in support of Plaintiffs' motion, and the remaining papers, pleadings and Orders in this action, and for good cause shown with no opposition or objections, the Court **GRANTS** Plaintiffs' Motion for Final Approval of Class Settlement in all respects.

## I.  BACKGROUND

This case is involves a wage-and-hour class action against Defendant The Brigantine Corporation, Inc. ("Defendant"). Defendant owns at least a dozen restaurants throughout San Diego County, including Brigantine Seafood and Miguel's Cocina, each of which have multiple locations. Defendant currently has over 1,000 team members. Between 2005-2016, Brigantine employed Neal Pataky in various roles including dining room server, bartender, and as a member of the wait staff. Brigantine employed Plaintiffs Jessica Cleek and Lauren Michelson as cocktail servers between 2013-2016.

On February 22, 2017, Plaintiffs Neal Pataky, Jessica Cleek, and Lauren Michelson filed a Complaint alleging that they and other servers were paid tips from Brigantine's customers, but that Brigantine imposed a mandatory "tip pooling" policy in all restaurants dating back a decade, requiring servers to "tip out" to other employees, including those that did not provide direct table service in violation of Federal and California law.

Plaintiffs allege that Defendant violated the Fair Labor Standards Act ("FLSA") prohibition against forcing employees to share tips with employees who do not provide direct table service to customers in places where the kitchen staff does not customarily and regularly receive tips. *Oregon Restaurant and Lodging Ass'n v. Perez*, 816 F.3d 1080, 1090 (9th Cir. 2016). Plaintiffs further allege that this violation is a predicate violation of the California Business & Professions Code, section 17200, et seq. ("Unfair Competition Law" or "UCL").

Thereafter, on May 8, 2017, the Court issued an order conditionally certifying the FLSA Collective Action. (ECF No. 25.) On June 18, 2018, the Court entered an Order preliminarily approving the parties' class action settlement; certifying the settlement class; appointing class representatives and class counsel; approving the parties' notice plan; and setting a final approval hearing for November 2, 2018, at 1:30 p. m. (ECF No. 84, "Preliminary Approval Order.") The three named Plaintiffs, Neal Pataky, Jessica Cleek, and Lauren Michelson, were designated as Settlement Class Representatives; Plaintiffs' counsel, at the law firm of Pope, Berger & Williams, LLP, were appointed as Class Counsel for purposes of the settlement. The Court also appointed Rust Consulting, Inc. to act as the Settlement Administrator to fulfill the obligations detailed in the Settlement Agreement.

On September 26, 2018, the Court entered an Order Granting a Joint Motion to Modify Limited Portions of the Court's June 18, 2018 Order Granting Preliminary Approval of Class Settlement, which directed Supplemental Notices to be mailed and reset a final approval hearing for January 14, 2019, at 1:30 p.m. (ECF No. 88, "Supplemental Preliminary Approval Order.") The Joint Motion sought to expand the notice ordered by the Preliminary Approval Order to include additional Settlement Class members who were not included based on previously missing class data. After the Court's Supplemental Preliminary Approval Order, Rust began mailing supplemental notices to all Settlement Class members. (*See* ECF No. 90 (Decl. of Jennifer Mills, dated October 4, 2018).)

A total of 1,233 Settlement Class members were mailed notice of the proposed settlement via the Supplemental Notices, and only two individuals requested exclusion—Sarah Beerer, and Patrick Holman. (*See* ECF No. 91-3 (Decl. of Jennifer Mills, dated December 5, 2018).)

## II.     Settlement Terms

Plaintiffs and Defendants negotiated a proposed settlement ("Settlement Agreement", submitted as Exhibit 1 to the Declaration of Stephanie Reynolds in support of Plaintiffs' Motion for Preliminary Approval of Class Settlement (ECF No. 78-2)) that will benefit approximately 1,231 Settlement Class members with monetary payments wherein Defendant will pay $550,000 without refund or reversion to the Settlement Class.

The Settlement Agreement contemplates that Defendant will pay certain compensation to settle the claims of Plaintiffs and all other servers within the class period and includes (1) all members of the FLSA Collective Action who have filed Consent to Join forms and (2) all other servers within the scope of the potential Rule 23 Class Action defined as:

> All current or former employees of The Brigantine, Inc. who have worked anytime between February 22, 2013 and April 30, 2017 as "servers," including but not limited to under job titles of food servers, cocktail lounge servers, dining room servers, and bartenders.

(ECF No. 78-2, at 13.)

The Settlement Amount is inclusive and in satisfaction of all requests for relief and payments to Plaintiffs and the Settlement Class arising from and related to this case including all claims for damages, interest, attorneys' fees, etc.

As discussed more fully below, Class Counsel have asked for $139,554.85 for attorneys' fees and costs; $2,500 in service awards for each of the three class representatives; and $18,556 in administrative fees for Rust Consulting, Inc. Class counsel estimates that the $550,000 settlement fund represents "a high percentage (approximately 75%) of the value of the money alleged to have been deferred from the Settlement Class members to other employees, *after* payment of all settlement fees and costs." (ECF No. 91-1, at 11.)

Payments to the Settlement Class will be made all at once from the money Defendant pays to Rust Consulting, Inc. As of this writing, Defendant has already

transferred the agreed-upon settlement amount to Rust Consulting, Inc. Unclaimed money from any uncashed checks will be sent to the California Unclaimed Property Fund so that Settlement Class members may obtain their claim shares at any time in the future. No amount of the settlement fund will be distributed to any *cy pres* recipients.

## III.   Discussion

Following preliminary approval, the notice period provided therein, and a supplemental notice period, no class members have objected to, or opposed the settlement. Only two individuals have requested to be excluded. (ECF No. 91-3, 3–5.) As of this writing, Defendant has already made the requisite $550,000 to the Court-appointed Settlement Administrator. (*See* ECF No. 87, at 7.) Plaintiffs further represent that everything required by the Court's Preliminary Approval Order has been accomplished. (ECF No. 91-1, at 8.)

The Court has reviewed and considered: (1) the terms and conditions of the proposed settlement as set forth in the Settlement Agreement (ECF No. 78-2); (2) the points and authorities submitted by Plaintiffs in support of the motion for final approval of the settlement, including an award of attorneys' fees, costs, expenses, as well as the Plaintiffs' incentive awards (ECF No. 91); (3) all declarations and exhibits submitted since entry of the Preliminary Approval Order; (4) the entire record of this proceeding, including but not limited to the points and authorities, declarations, and exhibits submitted in support of preliminary approval of the settlement (ECF No. 78); (5) the notice plans providing notice to the Settlement Class; (6) the proceedings at the Final Approval Hearing; (7) the absence of any objections, and only two exclusions from the settlement; (8) this Court's experiences and observations while presiding over this matter, and the Court's file herein; and (9) the relevant law.

Based on these considerations and the Court's findings of fact and

conclusions of law as set forth in the Preliminary Approval Order, the Court enters the following FINDINGS and CONCLUSIONS:

## A. The Court Has Subject Matter Jurisdiction

The Court has subject-matter jurisdiction over this Action and all acts within this Action, and over all the parties to this Action, including all members of the Settlement Class.

## B. The Class is Properly Certified

Before granting final approval of a class action settlement agreement, the Court must first determine whether the proposed calls can be certified. *Amchen Prods. v. Windsor*, 521 U.S. 591, 520 (1997). The Court previously conditionally certified the settlement class. (*See* Preliminary Approval Order, ECF No. 84.) Nothing appears to have changed in the interim which would affect the propriety of certification in the instant case. Accordingly, the Court's analysis here is largely the same as in its Preliminary Settlement Order.

Federal Rule of Civil Procedure Rule 23(a) establishes four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

Numerosity is satisfied if the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a). Here, numerosity is established by the fact that over 1200 Settlement Class Members have been noticed of the pending class action suit.

Commonality is satisfied if "there are any questions of fact or law common to the class." Fed. R. Civ. P. 23(a)(2). Commonality involves whether plaintiffs can show a common contention such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). Plaintiffs have

adequately demonstrated commonality by showing that Defendant applies common operations, policies, and procedures in its restaurants. Defendant distributes identical forms to employees of all restaurants to review and execute. Moreover, the nature of the work is similar in that "servers" as defined in the class have the responsibility of serving customers food and beverages. Further, Defendants' tip pooling policy for servers was similar or identical for each of its restaurants. Accordingly, commonality is satisfied as the Settlement class members each suffered the same injuries and share similar questions of law and fact regarding their FLSA and UCL claims.

Typicality is satisfied if the class representatives' claims are typical of those of the Class. Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). The named plaintiffs' claims involve the same injury and same conduct that other injured plaintiffs in this class would face. Accordingly, the typicality requirement is satisfied.

Finally, the adequacy requirement is satisfied if the class representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit requires an evaluation of two factors: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d at 1011, 1020 (9th Cir. 1998). The named plaintiffs are adequate class representatives as they appear to share the goal to advance the interests of others in the class and have met with counsel to discuss the claims, supported discovery efforts, and attended two sessions of the Early Neutral Evaluations that directly led to this settlement.

7

Adequacy is satisfied.

Finally, the settlement also satisfies the requirements of Rule 23(b)(3). Common questions of law and fact predominate over any questions affecting only individual members because the primary issue regarding Defendant's tip pooling policy is influenced by common facts identical to all settlement members. In addition, a class action is a superior method for settlement of the action as each class members' claim is common to the class and the settlement ensures certainty.

In light of the foregoing, the Court concludes that the Class provisionally certified in the Preliminary Approval Order has been appropriately certified pursuant to Rule 23 for settlement purposes.

## C. The Fairness of the Settlement Agreement

In determining whether a class action settlement is fair, adequate, and reasonable, the Court considers what are known as the *Hanlon* factors, which are:

> (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Gutierrez-Rodriguez v. R.M. Galicia, Inc.*, No. 16-cv-00182 H-BLM, 2017 WL 4621188 (S.D. Cal. 2017) (citing *Hanlon*, 150 F.3d at 1026). When a court exercises its discretion to approve a settlement, the Ninth Circuit has instructed:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 625 (9th Cir. 1982). "The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* (emphasis in

original).

The Court finds that the *Hanlon* factors strongly support settlement approval. The settlement, as provided by the Settlement Agreement, is in all respects fair, reasonable, adequate, and proper, and in the best interest of the Settlement Class.

Plaintiffs and Class Counsel maintain that this action and the claims asserted therein are meritorious and that Plaintiffs and the FLSA Class, and now the Settlement Class, have evidence to establish a case against Defendant. (ECF No. 78-2, at 3-6.) Defendant denies any wrongdoing and argues that the voluntary nature of its tip pooling is lawful. (ECF No. 36.) The parties acknowledge that protracted litigation over their respective legal positions will entail substantial risk for both sides, expense, uncertainty, and delays. (ECF No. 78-1, at 6-8.)

Based on the stage of litigation reached concerning relevant legal issues and the parties' exchange of information through discovery and the early Neutral Evaluation process, Plaintiffs and Defendant were fully informed of the legal bases for the claims and defenses herein, and capable of balancing the risks of continued litigation and the benefits of the settlement. Class Counsel and Defendant's Counsel are highly experienced civil litigation lawyers and are capable of properly assessing the risks, expenses, and duration of continued litigation.

Under the settlement and Settlement Agreement, Defendant has paid $550,000, without refund or reversion, inclusive and in satisfaction of all requests for relief and payments to Plaintiffs and the Settlement Class arising from and related to this case and the settlement of it, including but not limited to: all claims for damages, liquidated damages, interest, attorneys' fees, costs, and all other requests for relief and claims for payment under the causes of action alleged in Plaintiffs' Complaint; all of the costs and expenses associated with the Settlement Agreement and settlement administration; any service payments the Court may award to any of the Plaintiffs; any attorneys' fees and costs the Court may award;

9

and employer tax withholding on a portion of the payments to the Settlement Class which constitute W-2 wages; provided however, that consist with the Court's Supplemental Preliminary Approval Order, excess costs of administration above $18,556 will be paid separately by Defendant.

Otherwise, the settlement amount provides concrete payment and value to the Plaintiffs and the Settlement Class, representing as closely as possible a monetary payment for approximately 75% of the earned tips to each employee alleged to have been unlawfully used to compensate other employees of Defendant. It represents a balance between a payment certain and the risks inherent in continuing this case to trial and on appeal. In addition to the monetary compensation to be distributed to the Settlement Class, the settlement has created a monetary benefit to current and future employees of Defendant: during litigation, Defendant announced to its employees that its pay practices will be compliant with the federal laws Plaintiffs advanced in this case.

The Court has considered the realistic range of outcomes in this matter, including the amounts Plaintiffs might receive if they prevailed at trial, the strengths and weaknesses of the case, the novelty and number of the complex legal issues involved, and the risk that Plaintiffs and the Settlement Class would receive less than the settlement relief, or nothing, at trial. The relief offered by the Settlement Agreement is fair, reasonable, and adequate in view of these factors.

In addition, the Court finds that the parties' fully executed Settlement Agreement is appropriate and falls within the range of reasonableness to be finally approved as the terms of settlement of this action for the Settlement Class members. The settlement is the product of good faith, arm's-length negotiations between the Plaintiffs and Class Counsel, on the one hand, and Defendant and its counsel on the other hand, before Magistrate Judge Andrew Schopler. (*See* ECF No. 78.) The Court has found no evidence of collusion or other conflicts of interest between

Plaintiffs, Class Counsel, and the Settlement Class. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). The settlement comports with Rule 23.

### D. The Fairness of Settling the FSLA Collective Action

Having found the proposed settlement fair, adequate, and reasonable pursuant to *Hanlon*, the Court concludes that the settlement also passes muster under the "reasonable compromise" standard applicable to the fairness of FLSA collective actions. *See Pan v. Qualcomm Inc.*, No. 16-CV-1885, 2017 WL 325221, at *11 (S.D. Cal. Jul. 31, 2017) (observing that Ninth Circuit courts assess the fairness of FLSA collective actions under the "reasonable compromise" standard, which is satisfied if the proposed settlement "passes muster under Rule 23 analysis") (quoting *Gamble v. Boyd Gaming Corp.*, No. 2:13-CV-01009-JCM, 2015 WL 4874276, at *4 (D. Nev. Aug. 13, 2015)). As set forth above in the Court's Rule 23 analysis, this case reflects careful legal and factual analysis by the parties of issues actually in dispute and a correspondingly crafted Settlement Agreement which takes into account those factors.

### E. Attorneys' Fees and Costs

With respect to Attorneys' Fees, Class Counsel seek $137,500, or 25% of the $550,000 settlement fund. They also seek $2,054.85 in reasonable and substantiated costs.

In common fund cases such as this, the Court has discretion to employ either the percentage of the fund method, or the lodestar method to calculate a proper fee award. *In re Bluetooth Headset Prods. Liab. Lit.*, 654 F.3d 935, 942 (9th Cir. 2011). Under the percentage of the fund method, the Court awards some specific percentage of the fund as fees. The Ninth Circuit benchmark rate is twenty-five percent, *id.* at 942, which is prima facie support for the reasonableness of the fees requested by Class Counsel.

11

Meeting the benchmark rate, however, does not end the selection analysis. "Selection of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). Factors commonly considered in determining a reasonable percentage include the result obtained, the reaction of the class, the effort, experience, and skill of counsel, the complexity of issues, risks of nonpayment assumed by class counsel, and comparison with counsel's lodestar. *See Ruiz v. Xpo Last Mile, Inc.*, Case No. 5-CV-2125, 2017 WL 6513962, at *7 (S.D. Cal. 2017).

In this case, these factors all point in favor of the 25% benchmark rate. To wit, the result obtained here by Class Counsel here is substantial. The value of the settlement is approximately 75% of the value of the money alleged to have been deferred from the Settlement Class members to other employees. (ECF No. 91-1, at 11.) The risk of nonpayment assumed by Class Counsel was not insignificant, especially in light of the disputed nature of the Plaintiffs' claims and the contingency-based nature of their agreement with Plaintiffs. (ECF No. 78-3, at 9 (Decl. of Timothy G. Williams, dated March 22, 2018).) There have been no objections by the Class Members to the proposed settlement, indicating a favorable reaction of the class to the Class Counsel. The effort, experience, and skill of Class Counsel is also commendable.

The lodestar cross-check further confirms the soundness of the 25% benchmark rate. "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). The hours expended and the rate sought should be supported by adequate documentation and other evidence. *Hensley v. Eckerhart*, 461 U.S. 424, 438 (1983). However, trial courts may use "rough" calculations and "take into account their overall sense of a

12

suit [to] use estimates in calculating and allocating an attorney's time," so long as they apply the correct standard. *Fox. v. Vice*, 563 U.S. 826, 838 (2011).

Class Counsel's lodestar calculation employs hourly rates of $450 for partners, $350 for associates, and $150 for paralegals who worked on the instant litigation. (ECF No. 91-2, at 6 (Decl. of Timothy G. Williams, dated Dec. 17, 2018).) Based on its knowledge of prevailing standards in the community and absent any objection to the hourly rates, the Court finds the hourly rates for the various timekeeper categories used by Class Counsel to be reasonable. Furthermore, in light of Mr. Williams' declarations, Court is satisfied by the hours claimed by Class Counsel. (*See* ECF No. 78-3, at 6–9; ECF No. 91-2, at 6 (estimating the total number of hours spent by various individuals at Pope, Berger & Williams, LLP to be in the range of 700 hours).) The lodestar value of their time is approximately $285,000, more than twice the fee award sought ($137,500).

In light of the lodestar cross-check, and the other factors considered in *Xpo Last Mile*, 2017 WL 6513962, at *7, the Court **APPROVES** the $137,500 attorneys' fees sought by Class Counsel, and the $2,054.85 in costs requested.

## F. Plaintiffs' Services Awards and Administrative Costs to Rust Consulting, Inc.

Class counsel seeks $18,556 in settlement administrative costs to Rust Consulting, Inc. and $2,500 in service awards to the each of the three named plaintiffs. Both amounts would be drawn from the $550,000 settlement fund. There have been no objections contesting these requests. The Court finds the $2,500 incentive awards reasonable to compensate the named Plaintiffs for their service to the settlement class and in this action. Indeed, these enhancements are well-within the incentive awards given to named plaintiffs in suits involving similar settlement funds. *See Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, at *25 (S.D. Cal. June 1, 2010) ($25,000 incentive award in case with

13

settlement fund of $548,775). The $18,556 in administrative costs to be paid to the court-appointed Settlement Administrator is also reasonable and consistent with the estimate originally approved by the Court pursuant to its Preliminary Approval Order. The payer for services awards and administrative costs is **GRANTED**.

## IV.    Conclusions

On the basis of the foregoing findings and conclusions, as well as the submissions and proceedings referred to above, NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

1. The Plaintiffs' unopposed Motion for Final Approval of Class Action, (ECF No. 91) is **GRANTED**. The parties' fully-executed Settlement Agreement is finally approved as the terms of settlement of this action, including the conditionally certified Fair Labor Standards Act "Collective Action" class and the remaining "class action" claims in Plaintiffs' Complaint, as a full and final resolution of all claims in Plaintiffs' Complaint as described in the Agreement for the Settlement Class (except Patrick Holman and Sara Beerer). Those members of the Settlement Class are bound by the Agreement and any determinations, dismissals and/or judgments in this action concerning the same, including the releases by Settlement Class members of the Class Claims (as that term is defined in the Agreement) which now settles, resolves, and forever bars re-litigation of those claims.

*Certification of Class and Approval of Settlement*

2. The settlement and the Settlement Agreement are hereby approved as fair, reasonable, adequate, and in the best interests of the Settlement Class, and the requirements of due process and Federal Rule of Civil Procedure 23 have been satisfied. The parties are ordered and directed to comply with the terms and provisions of the Agreement.

3. The Court having found that each of the elements of Federal Rules of Civil

Procedure 23(a) and 23(b)(3) are satisfied for purposes of settlement only, the Settlement Class is permanently certified pursuant to Federal Rule of Civil Procedure 23, on behalf of the following persons: All current or former employees of The Brigantine, Inc. who have worked anytime between February 22, 2013 and April 30, 2017 as "servers," including but not limited to under job titles of food servers, cocktail lounge servers, dining room servers, and bartenders. The Settlement Class includes all members of the FLSA Collective Action who have filed Consent to Join forms, except Patrick Holman and Sara Beerer.

4. The Court readopts and incorporates herein by reference its preliminary conclusions as to the satisfaction of Rules 23(a) and (b)(3) set forth in the Preliminary Approval Order and notes again that because this certification of the Settlement Class is in connection with the settlement rather than litigation, the Court need not address any issues of manageability that may be presented by certification of the class proposed in the settlement.

5. For purposes of settlement only, the named Plaintiffs are certified as representatives of the Settlement Class, and Class Counsel is appointed counsel to the Class. The Court concludes that Class Counsel and the Class Representatives have fairly and adequately represented the Settlement Class with respect to the Settlement and the Settlement Agreement.

6. Notwithstanding the certification of the foregoing Settlement Class and appointment of the Class Representative for purposes of effecting the Settlement, if this Order is reversed on appeal or the Settlement Agreement is terminated or is not consummated for any reason, the foregoing certification of the Settlement Class and appointment of the Class Representatives shall be void and of no further effect, and the parties to the proposed Settlement shall be returned to the status each occupied before entry of this Order without prejudice to any legal argument that any of the parties to the Agreement might have asserted but for the Agreement.

7. The Settlement Class, and each Settlement Class member including the Plaintiffs (except Patrick Holman and Sara Beerer), on behalf of themselves, and their spouses, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, principals, agents, representatives, employees, attorneys, successors and assigns, and other persons or entities acting on their behalf, that they forever discharge, waive, and release Defendant, its past, present, and future parents, affiliates, subsidiaries, divisions, predecessors, successors, partners, joint venturers, affiliated organizations, insurers, past, present and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, partners, joint venturers, benefit plans, divisions, units, branches and other persons or entities acting on Defendant's behalf, from any and all claims, demands, obligations, actions, causes of action, or damages, which are alleged in Plaintiffs' Complaint or could have been alleged in the action based on the facts alleged in the Complaint, which arose during the Class Period, whether any of these claims are known or unknown, suspected or unanticipated, which any of the Settlement Class members has, or had, during the Class Period against Defendant. Nothing in the Settlement Agreement affects any unemployment insurance or workers' compensation insurance claims, or other claims or rights of any Settlement Class member not arising from the Class Claims within the Class Period. Except for Patrick Holman and Sara Beerer, all Settlement Class Members who have opted into the Class Action are deemed to have opted into the settlement for purposes of the FLSA; additionally, each Settlement Class Member who did not, for any reason, previously opt into the Class Action, but endorses or cashes a distribution check shall be deemed to have opted-in for purposes of the FLSA claims referred to in the Action and the Settlement.

8. Separate from and in addition to the releases by the Settlement Class, each of the Plaintiffs and Defendant hereby grant one another full and complete mutual

releases of any and all claims up to the date of entry of this Order as described in the Agreement, as to all claims, demands, obligations, actions, causes of action, or damages, including but not limited to those that are alleged in Plaintiffs' Complaint, as well as any and all derivative liabilities, demands, claims, causes of action, complaints and obligations, whether any of these claims are known or unknown, suspected or unanticipated, which they have, or had up to the date of final approval of this Settlement. For purposes of this paragraph: (a) Plaintiffs include themselves, and each of their spouses, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, personal representatives, successors-in-interest, principals, agents, representatives, employees, attorneys, successors and assigns, and other persons or entities acting on their behalf; and (b) Defendant includes Defendant, and its past, present, and future parents, affiliates, subsidiaries, divisions, predecessors, successors, partners, joint venturers, affiliated organizations, and insurers, past, present and future officers, directors, trustees, agents, attorneys, contractors, representatives, partners, joint venturers, benefit plans, divisions, units, and branches and other entities acting on Defendant's behalf.

9. These releases shall act as a full and final accord and satisfaction, and as a bar to all Class Claims by any Settlement Class members that arose during the Class Period, regardless of whether such claims are now known, and shall act as a full and final accord and satisfaction, and as a bar to all claims as between Plaintiffs and Defendant, regardless of whether such claims are now known. The Parties expressly state that California Labor Code section 206.5 does not preclude Plaintiffs and the Settlement Class members' waivers of claims in the Settlement. The Parties further acknowledge they understand and agree to waive the provisions with section 1542 of the California Civil Code regarding their released claims, to the fullest extent they may lawfully waive such rights or benefits pertaining to the

released claims. Such waivers inure as against any and all claims released by Settlement Class members in this Agreement.

10. Neither the Agreement nor any provision therein, nor any negotiations, statements or proceedings in connection therewith shall be construed as, or be deemed to be evidence of, an admission or concession on the part of the Plaintiff, any Settlement Class member, Defendant, or any other person of any liability or wrongdoing by them, or that the claims and defenses that have been, or could have been, asserted in this action are or are not meritorious, and this Order, the Settlement Agreement or any such communications shall not be offered or received in evidence in any action or proceeding, or be used in any way as an admission or concession or evidence of any liability or wrongdoing of any nature or that Plaintiffs, any Settlement Class member, or any other person has suffered any damage; *provided, however*, that the Agreement, this Order, and the final Judgment to be entered thereon may be filed in any action by Defendant or Settlement Class members seeking to enforce the Settlement Agreement or the final Judgment by injunctive or other relief, or to assert defenses including, but not limited to, *res judicata*, collateral estoppel, release, good faith settlement, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim. The Agreement's terms shall be forever binding on, and shall have *res judicata* and preclusive effect in, all pending and future actions or other proceedings as to the Class Claims and other prohibitions set forth in this Order that are maintained by, or on behalf of, the Settlement Class members or any other person subject to the provisions of this Order (except Patrick Holman and Sara Beerer).

11. In the event that the Agreement does not become effective or is canceled or terminated in accordance with the terms and provisions of the Agreement, then this Order and the final Judgment shall be rendered null and void and be vacated and all orders entered in connection therewith by this Court shall be rendered null

and void.

12. The Court awards $137,500 to Class Counsel as attorneys' fees and $2,054.85 for costs and expenses when distributions of claim shares to Settlement Class members are made by Rust Consulting, Inc. The Court also awards $2,500 to each of the named Plaintiffs NEAL PATAKY, JESSICA CLEEK, and LAUREN MICHELSON, in addition to their respective settlement shares available to them as members of the Settlement Class, when distributions of claim shares to all other Settlement Class members are made by Rust Consulting, Inc. The Court also awards Rust Consulting, Inc. settlement administrative costs to be paid from the $550,000 settlement fund up to $18,556, at or after the time when distributions of claim shares to Settlement Class members are made. All of these payments are from the $550,000 settlement payment, and not in addition to it. Any settlement administrative costs in excess of the $18,556 originally estimated at preliminary approval related to the Supplemental Notices are to be paid separately by Defendant within 30 days upon invoice from Rust Consulting, Inc. Class Counsel shall continue to coordinate with Rust Consulting, Inc. and the Settlement Class for the purposes of accomplishing and effectuating the terms of the settlement and distributions. Rust Consulting, Inc. shall continue to act as Settlement Administrator to fulfill the obligations as generally described in the Agreement and its March 12, 2018 proposal, submitted as Exhibit 2 to the Declaration of Timothy G. Williams in support of Plaintiffs' Motion for Preliminary Approval (ECF No. 78-3).

13. Rust Consulting, Inc. shall distribute the balance of settlement funds to the Settlement Class members in a single distribution as soon as practicable within 30 days of entry of this Order. For distribution payments to Settlement Class members, it shall include a legend on the settlement check stating "By cashing this check, I am opting into Pataky, et al v. The Brigantine, Inc. filed in federal court in

the Southern District of California, Case No. 17-cv-00352 GPC (AGS) under the FLSA, 29 U.S.C. § 216(b), and releasing the released Class Claims as described in the Settlement Agreement, including but not limited to claims under the Fair Labor Standards Act." Payments to Settlement Class members will be Fifty Percent as W-2 wages and Fifty Percent as non-taxed penalties. Taxes will be withheld on any wage portions paid to Settlement Class members by Rust Consulting, Inc., and the employer's share of payroll taxes will be paid from the Settlement Amount. Distribution shares shall be paid as calculated by Rust Consulting, Inc. based on a *pro rata* basis as detailed in Plaintiffs' Motion for Preliminary Approval and Motion for Final Approval, and as also described in the Settlement Class members' Supplemental Notices. Checks shall have "stale dates" of 60 days from the date of issuance; if any uncashed checks remain after 60 days, Rust Consulting, Inc. shall escheat those funds to the State of California as unclaimed property in the names of the Settlement Class members who did not cash their checks. Rust Consulting, Inc. shall include within the mailing containing the distribution payments, information (1) specifying the stale date of the checks, (2) explaining the escheatment of unclaimed settlement moneys to the State of California's Unclaimed Property Fund, and (3) providing information as to how Class Members may access their distribution shares upon escheatment through the California State Controller's Office.

14. This Action, including all individual and Class Claims resolved in it, is **DISMISSED WITH PREJUDICE**, without an award of attorneys' fees, costs, litigation expenses, or incentive payments to any party except as provided in this Final Approval Order. The Clerk of Court is **directed to enter FINAL JUDGMENT** accordingly.

15. Without in any way affecting the finality of this Order and the final Judgment, this Court hereby retains jurisdiction as to all matters relating to the

interpretation, administration, and consummation of the Agreement.

**IT IS SO ORDERED.**

Dated: January 14, 2019

Hon. Gonzalo P. Curiel
United States District Judge